IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Darlene Kalman,      :
    Plaintiff     :  Civil Action 2:11-cv-1075

  v.         :  Judge Watson

Michael J. Astrue,     :  Magistrate Judge Abel
Commissioner of Social Security,
    Defendant   :

## REPORT AND RECOMMENDATION

Plaintiff Darlene Kalman brings this action under 42 U.S.C. §§405(g) and 1383(c)(3) for review of a final decision of the Commissioner of Social Security denying her application for Social Security Disability and Supplemental Security Income benefits. This matter is before the Magistrate Judge for a report and recommendation on the parties' cross-motions for summary judgment.

**<u>Summary of Issues.</u>**

Plaintiff Darlene Kalman maintains she became disabled at age 42 by back pain and psychological impairments. The administrative law judge found that Kalman retained the capacity to perform a limited range of unskilled jobs having light exertional demands. Plaintiff argues that the decision of the Commissioner denying benefits should be reversed because:

- The administrative law judge failed to resolve the conflict between the testimony of the vocational expert and the Dictionary of Occupation Titles as required by Social Security Ruling 00-4p;

- The administrative law judge erred in failing to give significant weight to the June 15, 2012 opinion of consultative examiner, Dr. David Bousquet, a licensed psychologist; and,
- The administrative law judge erred in failing to direct the vocational expert on the totality of plaintiff's psychological limitations.

**Procedural History.**  Plaintiff Darlene Kalman filed her application for disability insurance benefits on July 15, 2008, alleging that she became disabled on August 15, 2004, at age 42, by diabetes and low iron.  (R. 217, 250.)  The application was denied initially and upon reconsideration.  Plaintiff sought a *de novo* hearing before an administrative law judge.  On February 23, 2011, an administrative law judge held a hearing at which plaintiff, represented by counsel, appeared and testified.  (R. 68.)  A vocational expert also testified.  On March 28, 2011, the administrative law judge issued a decision finding that Kalman was not disabled within the meaning of the Act.  (R. 30.)  On August 19, 2011, the Appeals Council denied plaintiff's request for review and adopted the administrative law judge's decision as the final decision of the Commissioner of Social Security.  (R. 1.)

**Age, Education, and Work Experience.**  Darlene Kalman was born March 28, 1962.   (R. 217.) She completed the tenth grade.  (R. 254.)  She has worked as a cashier.  She last worked October 31, 2007.  (R. 48-49.)

**Plaintiff's Testimony.**  The administrative law judge fairly summarized Kalman's testimony as follows:

> The claimant testified that she is 5'3" tall, weighs 159 pounds, and stated that she has lost weight due to being on a diabetic diet. The claimant further testified that she has her driver's license but does not drive

2

because she does not have a vehicle. She reported that she has a 9th grade education and did not obtain a GED. She further testified that she could read, write to some degree, and buy things in stores.

With reference to work, the claimant testified that she worked in 2008 as a telemarketer for two to three months but was let go because she could not make any phone sales. She stated that she does not receive unemployment benefits; however, she reported that she receives food stamps. Prior to that, she testified that she worked for Shell as a clerk for almost a year until October 2007 at which time she was fired. She reported that she also worked as a housecleaner and worked as a spot welder for three to four years but was laid off a few times in that position.

The claimant testified that her feet and legs hurt continuously and that she has nerve damage of her feet and legs due to diabetes, that she is a non-insulin dependent diabetic, and she takes Lyrica. She further stated that she has COPD for which she takes Spiriva and Advair and further stated that she has asthma, irritated by smoke, for which she uses an inhaler. She additionally report[ed] taking Flexeril, Crestor, and Mobic and that she is treated with Zoloft for dpression by Robert Looby, M..D. her primary care physician. She states she has been seeing Dr. Looby for approximately five years, seeing him two to three times per year. She reported that she has had no mental health treatment because she no income, has no medical insurance, and has not been approved for a medical card. She stated that she has had no hospitalizations, no surgeries, and has no surgeries scheduled for the future. On a scale of one to 10, with 10 being the most severe pain, she rates her pain, mostly of her feet and legs as a nine. Additionally, she stated that she gets a sensation of needles in her legs and feet and experiences cramps. She reported that she can walk for approximately five minutes, stand for five minutes, bend at the waist but cannot touch her toes, and that she cannot squat without leg pain. She stated that if she sits too long, she gets restless, and further stated that her memory is affected by her depression. She testified that her ability to hear is okay, and that she wears trifocals for blurry vision.

(R. 17-18.)

**Medical Evidence of Record.** The administrative law judge's decision fairly sets out the relevant medical evidence of record. This Report and Recommendation will only briefly summarize that evidence.

**Physical Impairments.**

Harrison Community Hospital. In 2006 and 2007, Kalman was seen by Kathy Connor, a certified nurse practitioner in Dr. Looby's office. On August 11, 2006, plaintiff was diagnosed with diabetes. On October 6, 2006, plaintiff reported that she had to climb a lot of steps, which caused shortness of breath. It took her about five minutes to recover after climbing a flight of stairs. Her energy level was done, and her appetite had increased. She was irritable and had trouble sleeping. (R. 372.)

An October 13, 2006 x-ray of plaintiff's chest showed no acute cardiopulmonary disease. (R. 472.)

On October 31, 2006, she was diagnosed with insomnia, shortness of breath, anemia, and depression. She was prescribed Zoloft and Spiriva. (R. 371.) On January 2, 2007, Kalman reported that she had been feeling fairly good. Spiriva helped with the shortness of breath. She complained of numbness in her left hand and was diagnosed with carpal tunnel syndrome. (R. 370.) On March 8, 2007, plaintiff was in no acute distress. Her extremities and feet were warm. She had good pulses, and her sensation was intact. (R. 369.) On March 22, 2007, plaintiff reported that she was feeling good. She was diagnosed with diabetes, chronic obstructive pulmonary disorder, and depression. (R. 368.)

4

Ms. Connor provided a recorded statement for the Bureau of Disability Determination that indicated that plaintiff's ability to sit, stand, handle objects, her, see, speak and travel were unimpaired. She could only walk about 200 feet before resting because of shortness of breath. Lifting was difficult because of chronic neck and back pain. She could carry and handle objects that were less than 10 pounds. With respect to her mental impairments, plaintiff's capacity for understanding and her memory were intact. Sustained concentration and persistence were moderately altered due to the presence of depression. Social interaction was unaffected. (R. 393-95.)

On July 8, 2008, Ms. Connor indicated that PFTs revealed mild restrictive lung disease. Plaintiff reported that her shortness of breath had worsened and that she experienced shortness of breath even with conversation. Plaintiff reported being very tired and having her feet swell. Sometimes her feet burned and sometimes they were numb. (R. 464.) On December 11, 2008, plaintiff complained of right arm pain from her shoulder to her fingers. Ms. Connor diagnosed cervical radiculopathy. (R. 465.)

On August 3, 2009, plaintiff requested that Ms. Connor provide a statement that she could not work. Plaintiff reported that her blood sugars had been running in the 180s-220s. She had chronic dyspnea on exertion, although Spiriva helped her. She reported having leg cramps at night. Ms. Connor diagnosed diabetes, chronic obstructive disorder, back pain, peripheral neuropathy, and bilateral foot pain. (R. 486.)

On May 6, 2012, Ms. Connor noted that plaintiff had intermittent swelling of her feet. She experienced crying spells and felt fatigued. Her feet hurt and were numb and

5

cold. (R. 517.) On June 10, 2010, plaintiff reported that she felt that Lyrica was helping her. She had increased dyspnea with exertion and conversation for the past two weeks. She had generalized joint pain. She was diagnosed with shortness of breath, peripheral neuropathy, and diabetes. (R. 516.)

Gary Hinzman, M.D. On May 22, 2007, Dr. Hinzman, a state agency physician, completed a physical residual functional capacity assessment. (R. 417 -24.) Dr. Hinzman concluded that plaintiff had no exertional limitations. Dr. Hinzman noted that plaintiff's breathing had improved with medication and that her diabetes was controlled with medication. (R. 418.) Dr. Hinzman believed that plaintiff could occasionally climb ramps or stairs but never ladders, ropes, or scaffolds. Plaintiff should avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation based on her chronic obstructive pulmonary disorder.

William D. Padamadan, M.D. On October 2, 2008, Dr. Padamadan evaluated plaintiff at the request of the Bureau of Disability Determination. (R. 449-55.) Plaintiff reported that she had been diagnosed with diabetes for the past three years ago. She had not been hospitalized for diabetes-related complications. She had no retinopathy requiring treatment, nephropathy or proteinuria. Plaintiff reported that she had right shoulder, right leg, feet pain and numbness despite the absence of any clinical findings of abnormalities. Plaintiff also reported that she had asthma although she had no history of asthma attacks. She reported having swelling in her right leg, but her leg was not swollen at the time of the examination. Her physical examination was normal. She

6

was diagnosed with type II diabetes on oral agents; a history of asthma without any lung findings; and a history of migraine headaches. Dr. Padamadan noted that he did not find her report of migraine headaches to be reliable. He noted that her mental status was normal without any overt signs of anxiety or depression. He found no indication for limitation of plaintiff's physical activities.

On June 24, 2010, Dr. Padamadan performed a second evaluation for the Bureau of Disability Determination. Plaintiff reported that she had had numbness and leg pain with total loss of sensation of legs below the knee since 2004. On physical examination, plaintiff's vibration and position senses were intact and her ankle reflexes were normal, which was not consistent with true peripheral neuritis according to Dr. Padamadan. Dr. Padamadan diagnosed type II diabetes with unreliable physical findings of neuropathy; back pain without objective findings of functional impairment; non-specific history of asthma without wheezes; and migraine headaches every 2-3 days. (R. 498-504.)

Dr. Padamadan opined that plaintiff could occasionally lift 21 to 50 pounds, frequently lift 11 to 20 pounds, and continuously lift up to 10 pounds. Plaintiff could occasionally carry 11 to 20 pounds and frequently carry up to 10 pounds. She could sit or stand without interruption for six hours and walk for 4 hours.  In an eight hour day, she could sit, stand or walk for 8 hours. She could operate foot controls frequently. She could occasionally climb stairs, ramps, ladders or scaffolds. She could occasionally balance. She could frequently stoop, kneel, crouch, or crawl. She could occasionally

work at unprotected heights. She could frequently work around moving mechanical parts. (R. 505-10.)

On February 14, 2009, Diane Manos, M.D. reviewed the evidence of record and affirmed the October 29, 2008 assessment. (R. 479.) It is not clear, however, what assessment is being referred to because I could not locate an assessment with this date in the record.

**Psychological Impairments.**

David R. Bousquet, M. Ed. On April 25, 2007, Mr. Bousquet, a psychologist, completed a disability evaluation report for the Bureau of Disability Determination. (R. 396-402.) Plaintiff indicated that she had never been involved with behavioral health counseling. She received psychotropic medications from her primary care physician. The medication was helpful, and she was less fearful and depressed. She had never been hospitalized for psychiatric reasons.

Plaintiff reported that she was currently working as a clerk at a gas station. She denied having any significant difficulties relating to others while working.

On mental status examination, plaintiff did not appear to be deliberately exaggerating or minimizing her problems. Plaintiff's mood was described as sad. She was able to maintain adequate eye contact. At times, her appetite was poor. She had difficulty falling asleep and returning to sleep. She was tearful 2-3 times per month. She denied suicidal or homicidal ideation. She described a sense of guilt and worthlessness. Her energy and motivation was low. She had low self-esteem and felt inadequate and

8

inferior. At times, she had difficulty relaxing. She experienced nausea, rapid heart rate, and breaking out into a sweat. She was afraid of being alone. Her attention and concentration were okay most of the time. Plaintiff described a tendency to brood and ruminate about her health and psychological difficulties. Her cognitive abilities fell in the low average range.

Plaintiff lived with her fiancé in a mobile home. During the day she played with her pets. She cleaned the house, cooked and did laundry. She had difficulty vacuuming and mopping because she experienced shortness of breath. She had to rest frequently. She watched television occasionally. She occasionally knit.

Mr. Bousquet diagnosed dysthymic disorder, late onset; anxiety disorder, not otherwise specified; and somatoform disorder, not otherwise specified. Mr. Bousquet assigned a Global Assessment of Functioning score of 70. With respect to plaintiff's work related mental abilities, Mr. Bousquet opined:

> 1. The claimant's ability to relate to others including co-workers and supervisors is seen as being mildly impaired given her current emotional and psychological difficulties and functioning.

> 2. The claimant's ability to understand, follow and remember simple/basic instructions and/or directions is seen as being not impaired. The claimant's ability to understand, follow and remember detailed/complex instructions and directions is seen as mildly impaired given her level of depression and anxiety.

> 3. The claimant's ability to maintain attention and concentration in order to perform simple repetitive tasks is seen as being not impaired. The claimant's ability to maintain an adequate persistence and pace from an emotional and psychological

perspective is seen as being mildly impaired. She does struggle with her energy and motivation.

4.      The claimant's ability to deal with stress and pressures associated with day-to-day work activities effectively and adaptively from an emotional and psychological perspective is seen as being mildly impaired.

(R. 402.)

On August 20, 2008, Mr. Bousquet evaluated plaintiff for the second time. (R. 425-30.) Plaintiff reported that she last worked in December 2007 as a laborer. She had to leave that job because of problems standing and walking. In the past, she had worked as a factory worker and as a housekeeper. On mental status examination, plaintiff appeared sad and anxious. Her appetite varied. She described herself as moody. She had difficulty relaxing. When she got nervous, she would shake, sweat, and occasionally get cold. She reported difficulty attending and concentrating. She was distracted by pain in addition to her thoughts and feelings. She was often forgetful. Her cognitive abilities fell in the low average to average ranges. She was able to care for her pets. She watched television all day. She occasionally did laundry, but her boyfriend helped with the household chores. She used to crochet, but she no longer had interest in doing so.

Mr. Bousquet diagnosed major depressive disorder, recurrent, without psychotic features; post-traumatic stress disorder; somatoform disorder, not otherwise specified; and personality disorder not otherwise specified with dependent and avoidant features.

He assigned a GAF score of 50. With respect to her work-related mental abilities, Dr.

Bousquet concluded:

1.   The claimant's ability to relate to others including coworkers and
     supervisors is seen as being moderately impaired given her current
     emotional and psychological difficulties and functioning.

2.   The claimant's ability to understand, follow and remember
     simple/basic instructions and /or directions is seen as being not
     impaired. The claimant's ability to understand, follow and
     remember detailed/complex instructions and/or directions is seen
     as being mildly impaired given her current level of depression and
     anxiety.

3.   The claimant's ability to maintain attention and concentration in
     order to perform simple repetitive tasks is seen as being not
     impaired. The claimant's ability to maintain an adequate
     persistence and pace from an emotional and psychological
     perspective is seen as moderately to markedly impaired. She
     reports having consistent problems with her energy and
     motivation. She is having difficulty with anger management.

4.   The claimant's ability to deal with the stress and pressures
     associated with day-to-day work activity effectively and adaptively
     is seen as being moderately to markedly impaired. The findings
     suggest that under the conditions of stress and pressure it is likely
     that the claimant will experience an exacerbation of her
     psychological problems and will tend to develop somatic
     complaints and symptoms.

(R. 430.)

On June 9, 2010, Mr. Bousquet evaluated plaintiff for a third time. Plaintiff was

anxious and fidgety. Her mood was depressed with underlying features of anxiety.  She

reported problems with her appetite and sleep. She reported experiencing auditory and

visual hallucinations.  She reported that her husband completes almost all the

11

housework. She had lost interest in watching television. Mr. Bousquet diagnosed post-traumatic stress disorder, chronic; major depressive disorder, recurrent with psychotic features; and a personality disorder not otherwise specified with dependent and avoidant features. She was assigned a GAF score of 50. Mr. Bousquet concluded that plaintiff's ability to relate to others was markedly impaired. Her ability to understand, follow and remember detailed/complex instructions was moderately impaired. Her abilities to maintain attention and concentration and to perform simple, repetitive tasks were mildly impaired. Her ability to maintain an adequate persistence and pace from an emotional and psychological perspective was markedly impaired. Mr. Bousquet also opined that plaintiff's ability to deal with stress and pressure associated with day-to-day work activity was markedly impaired. He concluded that plaintiff was likely to develop somatic complaints and symptoms. (R. 487-97.)

Caroline Lewin, Ph.D. On May 19, 2007, Dr. Lewin, a psychologist, completed a psychiatric review technique. Dr. Lewin concluded that plaintiff had mild restriction of activities of daily, mild difficulties in maintaining social functioning, mild difficulties in maintaining concentration, persistence, or pace, and no episodes of decompensation. (R. 403-15.)

Catherine Flynn, Psy.D. On September 17, 2008, Dr. Flynn, a psychologist, completed a mental residual functional capacity assessment and psychiatric review technique (R. 431-48.) Dr. Flynn opined that plaintiff was not significantly limited with respect to understanding and memory. Plaintiff was moderately limited in her abilities

12

to carry out detailed instructions, to maintain attention and concentration for extended periods, and to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. Plaintiff was moderately limited in her abilities to interact appropriately with the general public, to accept instructions and respond appropriately to criticism from supervisors, and to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. With respect to adaption, plaintiff was moderately limited in her ability to respond appropriately to changes in the work setting.

Dr. Flynn concluded that plaintiff's statements were only partially credible due to inconsistencies in statements made to examiner and adjudicator.

On January 30, 2009, Bruce Goldsmith, Ph.D. reviewed the evidence in the file and affirmed the September 17, 2008 assessment. (R. 478.)

**Administrative Law Judge's Findings.**

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2012.

2. The claimant has not engaged in substantial gainful activity (SGA) since October 31, 2007, the alleged onset date (20 CFR 404.1571 *et seq.* and 416.971 *et seq.*).

3. The claimant has the following severe impairments: diabetes mellitus II; peripheral neuropathy; asthma, chronic obstructive pulmonary disease (COPD); exertional shortness of breath; headaches; depression; post-traumatic stress syndrome; anxiety; somatoform disorder; and personality disorder with dependent and avoidant features. (20 CFR 404.1520(c) and 416.920(c)).

13

4.     The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1526, 416.920(d), 416.925 and 416.926).

5.     After careful consideration of the entire record, the undersigned finds that the claimant has the residual capacity to perform unskilled light work as defined in 20 CFR 404.1567(b) and 416.967(b) with the following limitations: lifting no more than 11-20 pounds frequently and 21-50 pounds occasionally; carrying no more than 10 pounds frequently and no more than 20 pounds occasionally; sit and stand for no more than six hours in an eight hour day; walk for no more than four hours in an eight-hour day; no more than frequent use of foot controls, i.e. pushing and pulling with the feet; no more than occasional climbing and balancing; no more than occasional exposure to unprotected heights; avoidance of concentrated exposure to fumes, odors, dusts, gases, and pollution particularly derived from poor ventilation; no more than one to three step decision making; and no more than occasional contact with supervisors, co-workers, and the public; and no rapid production quota requirements.

6.     The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7.     The claimant was born on March 28, 1962 and was 45 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8.     The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.     Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.    Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant

14

numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a). 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from October 31, 2007, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(R. 12-30.)

**Standard of Review**.  Under the provisions of 42 U.S.C. §405(g), "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive. . . ."  Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Richardson v. Perales*, 402 U.S. 389, 401 (1971)(quoting *Consolidated Edison Company v. NLRB*, 305 U.S. 197, 229 (1938)).  It is "'more than a mere scintilla.'"  *Id.  LeMaster v. Weinberger*, 533 F.2d 337, 339 (6th Cir. 1976).  The Commissioner's findings of fact must be based upon the record as a whole.  *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Houston v. Secretary*, 736 F.2d 365, 366 (6th Cir. 1984); *Fraley v. Secretary*, 733 F.2d 437, 439-440 (6th Cir. 1984).  In determining whether the Commissioner's decision is supported by substantial evidence, the Court must "'take into account whatever in the record fairly detracts from its weight.'"  *Beavers v. Secretary of Health, Education and Welfare*, 577 F.2d 383, 387 (6th Cir. 1978)(quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1950)); *Wages v. Secretary of Health and Human Services*, 755 F.2d 495, 497 (6th Cir. 1985).

**Plaintiff's Arguments.**  Plaintiff argues that the decision of the Commissioner denying benefits should be reversed because:

- <u>The administrative law judge failed to resolve the conflict between the testimony of the vocational expert and the Dictionary of Occupation Titles as required by Social Security Ruling 00-4p</u>. The administrative law judge concluded that plaintiff could walk for no more than four hours in an eight hour day. The administrative law judge relied on the vocational expert's testimony that plaintiff could perform jobs with a light residual functional capacity. Light jobs, however, require the ability to stand and walk approximately six hours in an eight hour day. The administrative law judge failed to resolve this conflict.

- <u>The administrative law judge erred in failing to give significant weight to the June 15, 2012 opinion of consultative examiner, Dr. David Bousquet</u>. With respect to Dr. Bousquet's April 25, 2007 consultative evaluation, the administrative law judge determined that plaintiff was more functionally limited than Dr. Bousquet opined. With respect to the August 20, 2008 evaluation, the administrative law judge gave limited weight to Dr. Bousequet's overall opinions, noting that some of his opinions were consistent with the evidence of record and support the residual functional capacity assessment and some were not supported by the overall record. Although the administrative law judge gave significant weight to the Dr. Catherine Flynn, a state agency psychologist who reviewed the evidence of record, the administrative law judge concluded that plaintiff was more limited that Dr.

16

Flynn opined. Plaintiff maintains that the administrative law judge erred in giving on limited weight to Dr. Bousquet's opinions. Dr. Bousquet examined plaintiff three times, and each time he determined that her condition had worsened. Moreover, he administrative law judge inconsistently evaluated Dr. Bousquet's opinions. At first he determined that plaintiff was more functionally limited that Dr. Bousquet found, and then he determined that she was less limited than he found.

- <u>The administrative law judge erred in failing to direct the vocational expert on the totality of plaintiff's psychological limitations</u>. Plaintiff maintains that because the administrative law judge failed to accept the significant limitations identified by Mr. Bousquet, he omitted significant limitations in his hypothetical question posed to the vocational expert. Plaintiff argues that the limitations presented to the vocational expert failed to adequately represent plaintiff's psychological limitations, and, as a result, the vocational expert's testimony regarding the jobs that exist in the national economy is unsupported.

**Analysis.**

<u>Conflict between the Dictionary of Occupational Titles and Testimony of Vocational Expert</u>. The administrative law judge concluded that plaintiff retained the residual functional capacity to perform unskilled light work as defined in 20 C.F.R. §§ 404.1567 and 416.967(b) with the following limitations: lifting no more than 11-20

17

pounds frequently and 21-50 pounds occasionally; carrying no more than 10 pounds

frequently and no more than 20 pounds occasionally; sit and stand for no more than six

hours in an eight-hour day; walk for no more than four hours in an eight-hour day; no

more than frequent use of foot controls; no more than occasional climbing and

balancing; no more than occasional exposure to unprotected heights; avoidance of

concentrated exposure to fumes, odors, dusts, gases, and pollution due to poor

ventilation; no more than occasional contact with supervisors, co-workers, and the

public; and no rapid production quota requirements.

 The administrative law judge posed the following questions to the vocational

expert:

> Q: Now, if we use the hypothetical that's in the record at Exhibit 15F
> for a hypothetical person with the same or similar conditions,
> limited to frequently lifting eleven to twenty pounds and
> occasionally lifting twenty-one to fifty pounds, but carry ten
> pounds frequently and twenty pounds occasionally, do you have
> an opinion as to what exertional level of work that would allow in
> terms of lifting and carrying?
> . . .
> A: That would be light, Your Honor.
> Q: Alright. Now if the ability to sit six hours, stand six hours and walk
> four hours in an eight hour day, would that still be consistent with
> light exertional level of work?
> A: That would be a limited light.
> Q: Alright.
> A: It would not be the full range of light work. Although there would
> be some light jobs where that would be appropriate.
> . . .
> Q: Alright. Using your knowledge of the regulations and your training
> as a Vocational Expert, since it was a little bit in terms of your
> response, light, limited light, and job specific, would there be any
> job or jobs that you could identify that would accommodate the

> hypothetical, as it has been presented to you and is presented in the record, hopefully consistent with Exhibit 15f?
>
> A:      Yes, Your Honor. . . .

(R. 108-10.) In addition to identifying the jobs that met the limited light restrictions, the vocational expert also identified jobs that plaintiff could perform at the sedentary level where she would only be required to stand and/or walk for two hours in an eight hour day. *See* R. 112-113.

Plaintiff's argument that the administrative law judge failed to reconcile discrepancies between the vocational expert's testimony and the Dictionary of Occupational Titles is without merit. The vocational expert specifically testified as to jobs that plaintiff could perform even if she was limited to walking only four hours per day. The vocational expert acknowledged that this would preclude many jobs at the light exertional level, but he testified that this restriction would not eliminate all light jobs. Furthermore, the vocational expert testified that his testimony was consistent with the Dictionary of Occupational Titles. *See* R. 114.

<u>Failure to Adopt Examining Psychologist's Opinion</u>. Although plaintiff maintains that the administrative law judge should have given more weight to the opinions of Mr. Bousquet, the administrative law judge properly evaluated his opinions, plaintiff's reported activities of daily living and other evidence in the record. The administrative law judge noted that Mr. Bousquet was an examining specialist who did not have the benefit of reviewing the evidence of record. The administrative law judge concluded that Mr. Bousquet's April 2007 evaluation was entitled to little weight

19

on the basis that the evidence showed that plaintiff had greater limitations in the areas of social functioning and the ability to maintain concentration, persistence and pace than found by Mr. Bousquet. With respect to Mr. Bousquet's August 2008 opinion, the administrative law judge concluded that portions of his opinion were consistent with the evidence of record, but he concluded that the evidence did not support Mr. Bousquet's conclusion that plaintiff had more than a moderate impairment in persistence or pace. The administrative law judge concluded that the 2008 opinion was more accurate than the 2007 opinion. As a result, the 2008 opinion was given some, although limited, weight. The administrative provided reasons for making distinctions between the 2007 and 2008 opinions. Plaintiff worked on 2007 without any difficulty arising from her mental impairments. Plaintiff reported that her medications were helpful in addressing her depression. (R. 395, 516.) The administrative law judge relied on the findings of Dr. Flynn, who found concluded that plaintiff had moderate limitations in her abilities to maintain concentration, persistence, or pace. Dr. Flynn concluded that plaintiff Mr. Bousquet's narrative report did not support his opinions of moderate to marked restrictions.

The administrative law judge also properly evaluated Mr. Bousquet's 2010 opinion. The administrative law judge rejected his conclusions that plaintiff had marked impairments in her social functioning and her abilities to maintain persistence and pace and to deal with the stress of daily work on the basis that they were not supported by other evidence. Specifically, the administrative law judge relied on the lack of mental

health treatment and her minimal complaints. As the Commissioner argues, treatment notes from nurse practitioner Kathy Connor do not document the degree of limitation found by Mr. Bousquet. (R. 368-70, 371, 373-75, 395, 464-65.) As a result, the administrative law judge did not err when he failed to adopt the opinion of Mr. Bousquet in its entirety.

Accuracy of Hypothetical Given Vocational Expert: Legal Standard. Plaintiff argues that the administrative law judge's hypothetical to the vocational expert was not supported by substantial evidence because

In determining whether a claimant is disabled, an administrative law judge makes a residual functional capacity determination. That finding is an "assessment of the claimant's remaining capacity for work" once his or her limitations have been taken into account. 20 C.F.R. § 416.945. It is "a more complete assessment of her physical and mental state and should include an 'accurate[ ] portray[al] [of her] individual physical and mental impairment[s].' *Varley,* 820 F.2d at 779; *Myers v. Weinberger,* 514 F.2d 293, 294 (6th Cir.1975) (per curiam)." *Howard v. Commissioner of Social Security,* 276 F.3d 235, 239 (6th Cir. 2002).

When a vocational expert testifies, the administrative law judge asks the expert to assume certain facts about the claimant's work abilities. The facts in this hypothetical are the administrative law judge's residual functional capacity findings. The administrative law judge must accurately state each limitation that affects the claimant's ability to work. If there is not substantial evidence supporting the limitations the

21

administrative law judge includes in the hypothetical to the  vocational expert, then the expert's testimony is not substantial evidence supporting the Commissioner's decision denying benefits.  *Howard,* 276 F.3d at 240-42.  If a limitation that substantially affects the claimant's ability to work is established by uncontroverted medical evidence, it is error for the administrative law judge to omit this limitation from the hypothetical given the administrative law judge.  276 F.3d at 242.

 <u>Accuracy of Hypothetical Given Vocational Expert: Discussion</u>.  Plaintiff argues that because the administrative law judge failed to accept the significant limitations identified by Mr. Bousquet, he omitted significant limitations in his hypothetical question posed to the vocational expert. As previously discussed, the administrative law judge did not err when he failed to adopt the opinion of Mr. Bousquet. Consequently, he was not required to pose a hypothetical question to the vocational expert containing the limitations identified by Ms. Bousquet. The administrative law judge properly formulated a hypothetical containing the limitations outlined in the administrative law judge's residual functional capacity findings.

 From a review of the record as a whole, I conclude that there is substantial evidence supporting the administrative law judge's decision denying benefits. Accordingly, it is **RECOMMENDED** that the decision of the Commissioner of Social Security be **AFFIRMED.**  It is **FURTHER RECOMMENDED** that plaintiff's motion for summary judgment be **DENIED** and that defendant's motion for summary judgment be **GRANTED.**

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties a motion for reconsideration by the Court, specifically designating this Report and Recommendation, and the part thereof in question, as well as the basis for objection thereto.  28 U.S.C. §636(b)(1)(B); Rule 72(b), Fed. R. Civ. P.

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court.  *Thomas v. Arn*, 474 U.S. 140, 150-52 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also, Small v. Secretary of Health and Human Services*, 892 F.2d 15, 16 (2d Cir. 1989).

 s/Mark R.  Abel                     
United States Magistrate Judge